UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**,

v.                                                                  Case No. 3:20-cr-86-J-32JBT

**RICARDO PEREZ et al.**
_____

### DEFENDANT RICARDO PEREZ' MOTION IN OPPOSITION TO
### THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE

The Defendant, Ricardo Perez, through his undersigned attorney, Richard Landes, Esq., opposes the Government's Motion In Limine To Preclude Evidence.  Specifically, the Government moves to preclude Ricardo Perez from offering any evidence that the insurance companies (Florida Blue, United HealthCare and Aetna) paid, for a period of time, insurance claims for urine and blood toxicology testing done at the four rural hospitals in question.  The Government theorizes that because the insurance companies, for a period of time, paid the claims submitted, that Ricardo Perez will argue this a complete defense to charges of fraud.  The Government believes that these large health insurance companies were somehow fooled or duped by the Defendants and Ricardo Perez into paying these claims.  The Government believes the Defendants and Ricardo Perez exploited a loophole that caused these claims to be paid.  The Government believes that the Defendants and Ricardo Perez will argue that these health

insurance companies were negligent in paying these claims, should have picked up on this fraud scheme sooner and that the Defendants and Ricardo Perez will thus argue this is a defense to the health care fraud charges brought by the Government. Because of these beliefs held by the Government, it argues that all evidence that the insurance companies paid these claims, even for a limited period of time, and the entirety of the "conduct" of these insurance companies should be excluded, because to allow otherwise would be to allow the Defendants and Ricardo Perez to 'blame the negligent victim', which is prohibited by the 11th. Circuit under *Unites States v. Svete* (citation omitted). While the Government can seek to advance their theory of what they believe the fraud was in this case, they cannot seek to exclude relevant evidence simply because it doesn't fit the narrative they wish to craft. For his part, Defendant Ricardo Perez states as follows:

From 2014 to 2019, Ricardo Perez was employed by Empower H.I.S., a company that provided medical billing, software, IT support, and other computer programming capabilities to hospitals, doctors, and the medical community. Ricardo Perez was involved in hospital, medical practice and diagnostic center medical billing from as early as 1992, working for his family's company Advanced Physician Billing (which was later sold). Empower H.I.S. was owned by Ricardo Perez and his brother, Defendant Jorge Perez, and was headquartered in Miami, FL. Ricardo Perez was the Vice President of Operations. Empower H.I.S. employed about fifty four (54) people. Ricardo Perez was responsible for running the day to day operations of the office, personnel, payroll and, among other duties, communication between the rural hospitals in question and J.V.S. billing, a company that the actual medical billing was subcontracted to. Ricardo Perez oversaw the billing involving the laboratory outreach/reference lab programs of three of the four rural hospitals listed in the Indictment. Those three hospitals were Campbellton

Graceville, Regional General of Williston, and Putnam County Memorial. Ricardo Perez was not involved in the billing of the fourth hospital listed in the Indictment, Chestatee Regional Hospital.

It is alleged that the Defendants and Ricardo Perez, were involved in a pass- through billing scheme and took advantage of the favorable reimbursement rates paid by these rural hospitals for urine and blood toxicology screening tests, and somehow deceived the health insurance companies Florida Blue, United HealthCare and Aetna into paying hundreds of millions of dollars in claims that these three insurers decided, after some time, were fraudulent. All of these Government allegations are disputed.

Like many rural hospitals, the four listed in the Indictment struggled financially. The expansion of a rural hospital's outreach laboratory program, or reference lab is legal throughout the United States. Rural hospitals generally receive higher insurance reimbursement rates and using these hospital's laboratories to perform testing in order to generate higher insurance reimbursement is legal. It is likewise legal to have urine and blood samples sent to these rural hospitals for testing, whether the patient has a relationship with the hospital or not. The use of reference labs as a business model for the purpose of insurance billing is an acceptable business practice. Brad Van Pelt, an independent witness and the owner of Interpulse Healthcare Solutions, described his legal business to the FBI this way: he helps independent labs nationwide to plug into contractual arrangements with in-network hospitals, which test part of the samples at the hospitals and then outsource the rest of the sample to independent labs. "The hospitals bill the insurers for the testing using "non-patient rates." The labs are then paid for their work under a contractual arrangement with the hospital...This arrangement allows independent labs to stay in business by using the hospital's in-network status to get samples

processed for the labs' clients...Tests are billed at the "non-patient" rate, and not the "out -patient "rate.." (FBI report, Brad Van Pelt, 08/30/2017, pgs.1-2).  This is precisely the practice under which Ricardo Perez' business, Empower H.I.S. was billing.

Importantly, this case involves real patients, real laboratory testing, and real test results obtained, all based on doctor's orders. The bills submitted to the various insurance companies all contained the non-patient billing code of 141, which is a specific code alerting the insurers that the patient was neither an in-patient nor out-patient of the hospital.  This was, and still is, an acceptable billing code.  This code was placed on virtually all claims submitted. This was confirmed by case Agent Robert Schwinger, who testified that "[t]he claims all have codes that say the kind of patient, inpatient, outpatient. 141 is a –essentially says it's a nonpatient (sic) of the hospital. We saw that code on pretty much every single claim submitted by the subjects in this case." (G.J. testimony, Robert Schwinger, 02/12/2020, pg.43). While Agent Swinger opines that somehow the code is not relevant, or that it was intended to be used sparingly, or the insurance companies did not "contemplate' non-patients, or that the 141 code was used to "slip through" these claims, that is conjecture, not fact.   By way of example, three (patient information redacted) random claims are attached as exhibit A. On all, it clearly and prominently shows, at the top of each page the words 'TYPE OF BILL' and the code "141", meaning a non-patient of the hospital, rather than an in-patient (code 111) or an out-patient (code 851).  As can be seen from these bills, this billing code is not hidden, nor buried deep inside the claim, nor obscured in any way.

It is also a fact that these insurance companies did pay these claims for a period of time before cutting off payment, alleging fraud.  Specifically,  Florida Blue paid these claims to Campbellton-Graceville Hospital from November 17, 2015 through October 1, 2016, a period of

a little less than a year. (G.J. testimony of Robert Schwinger, 04/03/2019, pg. 32)  Florida Blue likewise paid these claims to Chestatee Regional Hospital from September 12, 2016 through March 4, 2018.  The various other insurance carriers all paid these claims to the four hospitals in question for various lengths of time, a fact which the Government now seeks to exclude.

At it's core, this case is not a criminal conspiracy – it's a contract dispute.  The large health insurance companies were unhappy with the high amounts of money they were paying for laboratory testing and sought to remedy the problem.  This is the essence of what health insurance companies do – they negotiate how much to pay hospitals and doctors for medical care and service rendered – and attempt to negotiate the lowest possible rates of payment.  As stated in an FBI memo, "[a]t the end of 2018, a team of lawyers and executives came to Florida Blue to try to resolve a contract dispute." (FBI memo, 11/14/2018, drafted by Robert Schwinger, pg. 4)  Florida Blue demanded repayment for claims it paid to Regional Hospital Williston that it perceived as fraudulent.  The issue was not resolved by the parties. In that same memorandum, "Florida Blue acknowledged there is a Medicare ruling allowing a "reference lab" arrangement in certain limited circumstances." (FBI memo, 11/14/2018, pg.5).   A United HealthCare Reimbursement Policy memorandum,  entitled "Non-Patient Facility Laboratory Services Policy", dated May 9, 2018, states in it's Overview, "This policy describes how United HealthCare reimburses non-patient laboratory services when submitted with Type of Bill (TOB) 014X [141] for providers that are not reimbursed according to a fee schedule." (attached as exhibit B).  As such, the argument that these insurers never contemplated that the 141 non-patient billing code would be used, or that it was somehow rare, or that the using of this code duped them and somehow made them the victims of insurance fraud is simply untrue.  That  the insurance carriers paid these claims for a time is an integral fact which the Government now

seeks to exclude.

In further support that this is not a health care fraud case, but a contract dispute, the Government's questioning of Agent Robert Schwinger in the Grand Jury is instructive:

> [Q]  Are these payments (sic)[should read contracts] typically very long-standing and oftentimes fairly old between the critical access care hospitals and the insurance companies?
>
> A.  Yes. I mean we learned from talking to the people in these insurance companies that most of these contracts have been in place for a long time. And as you'll see in some of these contracts, they get amended over time as things change, but in general the basic provisions of them have been around for a long time. And in some cases, the reality has outgrown the contract, but they haven't always gone back and changed things, which, as you'll see in this case, were taken advantage of.  (G.J. Agent Schwinger, 04/03/2019, pg. 40)

Anthem Blue Cross Blue Shield "wanted to renegotiate the operative contacts with CRH [Chestatee Regional Hospital] because "it was still operating under the 1998 contracts with 2006 amendments" (FBI report of Shalini Wittstruck, Anthem Regional V.P.,  interview, 01/07/2019 pg.2). Eventually, "CHR agreed to accept a new fee schedule for lab billings" (FBI Wittstruck interview, pg.3).   Julie Gallagher, Esq., a lawyer retained by Campbellton-Graceville Hospital to review their contracts, told Agent Derek Holt that the hospital was permitted to operate their outreach/reference lab program,  that it was legal for the hospital to receive urine specimens, conduct the necessary lab tests and then bill the insurance carriers in the way that they were billing them. (OPM memorandum, pg. 4, dated 08/22/2016).

With this backdrop, the Government now argues that the Defendants and Ricardo Perez should not be able to question or cross examine these insurers that, for a time, they paid thousands of claims for urine and blood toxicology testing. The Government goes even further, arguing that "[e]vidence regarding the insurance companies' conduct has nothing to do with Defendants' guilt or innocence as a matter of law, and therefore fails to meet the standard for relevance." ( Government's Motion In-Limine, pg. 11)  The Government not only seeks to exclude evidence of insurance company payments for a period of time, but it's "conduct" throughout the period of the charged conspiracy, from May of 2015 through February of 2018. In this way, the Government seeks to prevent the Defendants and Ricardo Perez from presenting evidence that this is not a criminal conspiracy at all, but a contract dispute.

## THE EVIDENCE THE GOVERNMENT SEEKS TO EXCLUDE IS INEXTRICABLY INTERTWINED WITH THE FACTS OF THE CASE

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed R. Evid. 401,402. A district court may nonetheless exclude relevant evidence under Rule 403 "its probative value is substantially outweighed by the danger of...unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  District court judges are afforded "the broadest discretion in determining whether evidence should be excluded under Rule 403" *United States v. Costa*, 947 F.2d 919,924 (11th Cir. 1991). "In criminal trials relevant evidence is inherently prejudicial" and thus the rule "permits exclusion only when unfair prejudice substantially outweighs probative value." *United States v. Merrill*, 513 F.3d 1293,

1301 (11th Cir. 2008).  The term "unfair prejudice" as applied to a criminal defendant, "speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172,180, 117 S.Ct. 644,650 (1997).  The primary function of Rule 403 is to exclude evidence of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983).

The Government seeks "to preclude Defendants from arguing, offering evidence, or eliciting on direct or cross examination, any "blame the victim" defenses..." (Government Motion In Limine, pr. 10)  It ostensibly seeks the preclusion of evidence that the insurance companies "...paid many of the claims submitted..." (Government Motion, pg. 10). First, that the insurance companies paid these claims for a period of time is not only relevant, but part and parcel of Ricardo Perez' defense that this is a contract dispute between private parties, that is, the private insurance companies and the private billing company that employed Ricardo Perez.  To simply excise or cut out this fact is to deny Defendant Ricardo Perez his right to put forth his defense.

Boiling this down to it's essence, first claims were submitted to insurance companies for payment. Second, the claims were paid. Third, the insurance companies came to believe they were paying too much, claiming fraud.  Fourth, they attempted to renegotiate the contracts. Fifth, they sued many of the collective Defendants charged in the Indictment.  And sixth, the Government indicted the collective Defendants for health care fraud. That the  private insurance carriers for a time paid these claims is a fact that cannot simply be cut out of the narrative, any more than the billing codes used by Ricardo Perez or the insurance carriers' attempts to renegotiate the rural hospitals' contracts can be.  To remove the facts surrounding the payment of

these claims or the insurance companies' conduct would be confusing, would tend to mislead the jury and would be unfairly prejudicial to Defendant Ricardo Perez. How would it be explained that a dispute even arose between the billing company that employed Ricardo Perez, Empower H.I.S., and the insurance companies that were paying the submitted claims if the jury were prevented from hearing that the insurance companies paid these claims for a period of time? How can the Government think that it could present loss figures on behalf of the insurance companies while at the same time seeking to exclude evidence that they paid these claims? How does the Government seek to argue that the insurance companies were defrauded while, at the same time, asking that no evidence be presented that the insurance companies paid claims? Ricardo Perez does not seek to "blame the victim", nor argue that the insurance companies were negligent, nor that they should have discovered the fraud sooner - instead, he seeks to argue that there is not victim, nor any fraud. The fact that claims were paid, for whatever period of time, is part of the chain of events of what occurred. *See United States v. Wright*, 392 F.3d 1269, 1276 (11th. Cir. 2004) (affirming the admission of evidence "pertaining to the chain of events explaining the context...or [which] forms an integral and natural part of an account of the crime [] to complete the story of the crime for the jury" (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)).

Even the Government concedes that the contracts the insurance carriers had with the rural hospitals to cover laboratory testing were unclear and vague when it writes that at trial, insurance company representatives "will *clarify* that their contracts with the rural hospitals were *intended* to cover services provided at the hospitals' labs for inpatients and outpatients of the hospital" (emphasis added, Government Motion In Limine, pg. 8). So while the Government believes it relevant for the insurance carriers to be allowed to clarify their previously unclear contracts and

testify as to what the contracts intended to mean, they seek to prevent Defendant Ricardo Perez from asking, whether or not in the first instance, they paid these claims.  The Government cannot have it both ways.  That the insurance companies paid these claims for a time, and their conduct during the course of events is, relevant and probative evidence – to exclude this evidence would be to mislead and confuse the jury.

**WHEREFORE**, the Defendant, Ricardo Perez, for the above reasons, requests this Honorable Court deny the Government's Motion In Limine to exclude evidence that the insurance companies initially paid claims for urine and blood toxicology testing.

Respectfully submitted,

Richard Landes, Esq.

*s/Richard Landes*

Attorney for Defendant Ricardo Perez

Florida Bar No. 71390

736 2nd St. N

Jacksonville Beach, FL 32250

904 343-4556

rjlandes@gmail.com


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 5, 2021, I electronically filed the foregoing motion with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Assistant United States Attorney Tysen Duva.

*s/Richard Landes*

Richard Landes