UNITED STATES DISTRCT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA                    CASE NO.: 3:20-cr-00086

v.

JORGE PEREZ,
RICARDO PEREZ,
SETH GUTERMAN,
AARON DURALL
JAMES F. PORTER, JR.,
SEAN PORTER,
CHRISTIAN FLETCHER,
NEISHA ZAFFUTO,
AARON ALONZO, AND
NESTOR ROJAS
        Defendants.
_____/

## DEFENDANT JAMES F. PORTER'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. PETER R. KONGSTVEDT, MD, FACP

Comes now, the Defendant, JAMES F. PORTER, JR., by and through undersigned counsel, and hereby moves this Court to preclude or limit the testimony of the Government's expert, Dr. Peter R. Kongstvedt, MD, FACP, under *Daubert v. Merrell Dow Pharmaceuticals*, 526 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. at 152 (1999); and rules 702, 401, 402 and 403 of the Federal Rules of Evidence. The Defendant respectfully requests a *Daubert* hearing to determine the admissibility of Dr. Kongstvedt's testimony. In support of his motion, Mr. Porter avers:

### SUMMARY OF THE ARGUMENT

The Government bears the burden of establishing the reliability of Dr. Kongstvedt's testimony. At the present, the Government does not meet this burden because the expert report

DEFENDANT'S DAUBERT MOTION

provided does not set forth the methodology used by Dr. Kongstvedt to develop his testimony. Additionally, the proposed testimony, contained in the expert report, is only marginally, if at all, relevant to the Defendant's knowledge and/or intent. To the extent the testimony is relevant, it is substantially more unfairly prejudicial than probative. Finally, Dr. Kongstvedt's only truly relevant opinion contained in his expert report is whether or not "passthrough billing" and "unbundled billing" are in fact fraud, and this is the ultimate issue for the jury to decide.

## SUMMARY OF THE GOVERNMENT'S EXPERT REPORT

Dr. Kongstvedt produced a 93 page report on October 7, 2020. The term fraud or fraudulent appears in Dr. Kongstvedt's report over 80 times. Dr. Kongstvedt's opinions are not legally sound. Dr. Kongstvedt generally provides a stream of consciousness review of the opinions he determined based on his own opinions of what relevant provider contracts and manuals intend, rather than their plain meaning, and his own definition of healthcare fraud and abuse, rather than established federal law. He attempts to set a disclaimer for his opinions by stating in footnote three of his report, "throughout this report, use of the words "healthcare fraud" or "fraud" is from an operational and health policy point of view as well as my experience in the industry, and not meant as a legal definition or interpretation of law." However, such a disclaimer is improper, as he was engaged to provide opinions as an expert in a court of law. As such, his admission he is not using legal definitions or interpretations of law to determine improper billing, healthcare abuse, or healthcare fraud, forms a strong basis to exclude his testimony. In fact, 18 USC section 1347, and 18 USC section 1349 are only found on page 72, in appendix two of Dr. Kongstvedt's report (referencing the indictment only) and on page 1, the title page (again, referencing the case and indictment). Throughout his 93 page report, he does not cite to the actual indicted crimes or legal authority defining what constitutes fraud/fraudulent

conduct. As previously stated, he simply creates his own definitions and standards, not supported by existing law at the time of the conduct alleged in the indictment. Based on his admission, his opinions will not aid a jury in understanding complex issues, and only serve to confuse the jury into excepting lower standards for healthcare fraud, than what federal law establish.

## ARGUMENTS AND AUTHORITIES

Under Rule 702 of the Federal Rules of Evidence, "expert testimony must be both reliable and relevant." *Umana-Fowler v. NCL (Bah.) Ltd.,* 49 F. Supp. 3d 1120, 1121 (S.D. Fla. 2014) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).  The party offering the evidence has the burden to show: 1) the expert is qualified due to having knowledge, skill, experience, training or education in the field of said testimony; 2) such testimony will assist the trier of fact to understand evidence or determine a fact in issue; 3) such testimony is based on sufficient facts or data; 4) the testimony is the product of reliable principles and methods; and 5) the witness reliably applies the principles and methods to the facts of the case. FED. R. EVID. 702; FED. R. EVID. 104(a); *see also Daubert v. Merrell Dow Pham., I*nc., 509 U.S. 579, 588 (1993).

This Court's "gatekeeping" responsibility under *Daubert* cannot be overstated.  *Frazier*, 387 F.3d at 1260. As the Supreme Court framed the issue in *Kumho Tire*, "The objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael,* 526 U.S. at 152 (1999). The question of whether an expert's testimony is reliable depends on the facts and circumstances of

DEFENDANT'S DAUBERT MOTION

the particular case. *Id.* at 158.  The party offering the expert testimony bears the burden of establishing reliability and helpfulness. *Frazier*, 387 F.3d at 1260.

Expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 at 595. "[I]ndeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are "of a type reasonably relied upon by experts in the particular field in the forming opinions or inferences upon the subject.'" *Frazier*, 387 F.3d at 1260 (citing FED. R. EVID. 703).

An expert opinion should be excluded if it is not "helpful" to the jury. An opinion is not helpful to the jury if the average layperson is "capable of understanding an issue without the aid of an expert." *United States v. Navedo-Ramierez*, 781 F.3d 563, 568 (1st Cir. 2015) (citing *United States v. Salimonu*, 182 F.3d 63, 74 (1st Cir. 1999)) (Affirming district court's exclusion of expert testimony regarding battered woman syndrome and duress in part because threats defendant received were such that "any person could readily appreciate their impact" unaided by expert testimony),  "Because of the powerful and potentially misleading effect of expert evidence, … sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Frazier*, 387 F. 3d 1263.  "The judge in weighing possible prejudice against probative force under Rule 403… exercise more control over experts than over lay witnesses." *Id.* (internal quotes omitted); *see also United States v. Stevens*, 935 F.2d 1380, 1399 (3d Cir. 1991).  In *Rink v. Cheminova, Inc.,* the district court found the Plaintiff's proposed expert witness, Dr. Jack Matson could not testify because, "the methods of data transposition and temperature extrapolation failed under the reliability factors mentioned in *Quiet Technology* because the methods were not tested, subjected to peer review or generally accepted in the

DEFENDANT'S DAUBERT MOTION

scientific community." See *Rink at* 400 F.3d 1286 (11th Cir. 2005) (citing *Quiet Tech. DC-8, Inc., v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, (11th Cir. 2003). The court went on to say, "the data Matson produced was driven by the methodology he used, and thus the district court's inquiry into how he arrived at the data is not inappropriate considering that the district court is charged with evaluating and expert's methodology. *Id., See Id.* citing Fed R. Evid. 702, (requiring expert testimony to be the "product of reliable principles and methods"), *see Id. citing Quiet Tech. DC-8, Inc.,* 326 F.3d 1333, (requiring an expert's testimony to be based on "sufficient … data."); *Id.* citing *General Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997) (noting a district court's consideration of data is proper in the context of evaluating methodology when an "analytical gap exists between the data and the opinion offered").

I.    **THE GOVERNMENT INTENDS TO CALL DR. KONGSTVEDT AS AN EXPERT WITNESS.  BASED ON DR. KONGSTVEDT'S EXPERT REPORT, HIS OPINIONS WOULD LIKELY MISLEAD THE JURY AS TO THE DEFINITION OF FRAUD, AND HIS OTHER OPINIONS WOULD INVADE THE PROVINCE OF THE JURY OR THE COURT.**

In general, an expert witness is called as a witness at trial to help educate the jury on complex issues a layperson juror may have no prior experience or knowledge in dealing with. However, it is commonly accepted any expert witness called before a jury cannot invade the province of the jury in determining the facts or ultimate issue of guilt or innocence. It is ironic the Government has indicted the Defendants for intentionally committing the crime of Conspiracy to Commit Health Care Fraud and Health Care Fraud, but now takes the position a layperson juror could not determine it was fraud without the help of their multiple expert witnesses. If the jury cannot determine the fraud without multiple experts to explain how the billing techniques are fraud, how could the Defendants have known? Regardless, the

DEFENDANT'S DAUBERT MOTION

Government seeks to call Dr. Kongstvedt as an expert witness in the field of medical billing. However, Dr. Kongstvedt, despite not being a lawyer, creates his own personal definition of fraud. It is the Court's responsibility to instruct the jury on the law and the definitions of legal terms. Dr. Kongstvedt using the term fraud, with his own definition of it, in front of the jury will not educate the jury in anyway, and will do nothing more than confuse the jury as to the proper definition of fraud and/or fraudulent conduct. Furthermore, if the Court allows Dr. Kongstvedt to testify to his personal definition of fraud, which does not comport with the jury instructions, the Court would effectively allow the Government to shift the burden to the Defendants to show the correct definition of fraud and its application to the facts.

It appears from Dr. Kongstvedt's report, the Government intends to call him to determine for the jury whether criminal health care fraud was committed by the Defendants. This is clearly improper. Such statements go directly to the ultimate issue of fact the jury must determine.

Some of the Defendants in this case are also Defendants in a civil lawsuit filed by RightCHOICE, the parent company of Blue Cross Blue Shield of Missouri, in the Federal District Court for the Western District of Missouri, St. Joseph Division[1]. In that civil fraud case, Dr. Kongstvedt is also the expert witness for the Plaintiff, RightCHOICE. Much like in this case, Dr. Kongstvedt filed an expert witness report detailing his definition of fraud and why he claims the billing techniques used by the Defendants is fraud. After filing that report, Dr. Kongstvedt amended his report to remove any use of the word fraud in the civil matter, a clear recognition Dr. Kongstvedt cannot testify to his meaning of fraud before a civil jury.

---

[1] Case Number: 5:18-CV-6037-DGK; RightCHOICE Managed Care, Inc., *et al.* v. Hospital Partners, Inc., *et al.*

DEFENDANT'S DAUBERT MOTION

II.    **DR. KONGSTVEDT'S OPINIONS ON CMS GUIDELINES ARE IRRELEVANT, AS THE LAW HE RELIES UPON WAS NOT IN EFFECT AT THE TIME THE HOSPITALS SUBMITTED THE BILLING IN THIS CASE.**

In his expert witness report, Dr. Kongstvedt repeatedly cites to CMS (Centers for Medicaid & Medicare Services) guidelines to support his determination the Defendants billing techniques were in fact fraud. The CMS guidelines are in place to cover the dealings with Medicare and government insurers. However, in this case, the contracts and provider manuals are the appropriate place to look for guidance as to what can be billed between the hospitals and the private insurers. The reason Dr. Kongstvedt skips the contracts and provider manuals almost entirely is because the contracts and provider manuals in force during the relevant time period are silent regarding the issues Dr. Kongstvedt intends testify are clearly fraud. Newer versions of the contracts and provider manuals include provisions limiting the amount of "pass through" billing, but even the newer contracts do not call the Defendants' billing techniques fraud or bar them completely. In addition, the CMS guidelines in place at the time the hospitals submitted the billing that is the basis of this case, did not contain the provisions Dr. Kongstvedt refers to (they appeared in 2018). Much like the contracts and provider manuals, the CMS guidelines were amended after the relevant time period outlined in the indictment.

**WHEREFORE**, the Defendant, JAMES F. PORTER JR., by and through the undersigned counsel respectfully requests this Court set a time for a hearing pursuant to *Daubert*

DEFENDANT'S DAUBERT MOTION

on the admissibility of Dr. Kongstvedt's testimony, and requests this Court preclude or otherwise limit Dr. Clark's testimony at trial.

**THE SCHWARTZ LAW GROUP, P.A.**

/s/ *Seth Schwartz*

_____

Seth Schwartz, Esquire
Florida Bar No.: 739421
Albert J. Tasker IV
Florida Bar No.: 743321
10365 Hood Road, Suite 104
Jacksonville, FL 32257
(904) 292-0222
(904) 292-0044 fax
service@flattorney.net
Counsel for Defendant James F. Porter Jr.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above pleading was filed with the Clerk of Courts electronically via the CM/ECF system, which will send a notice of electronic filing to all counsel of record this 16th day of March, 2021.

/s/ *Seth Schwartz*

_____

Seth Schwartz, Esquire

DEFENDANT'S DAUBERT MOTION