UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:20-cr-86-TJC-JBT

CHRISTIAN FLETCHER

## ORDER

**THIS CAUSE** is before the Court on Non-Parties Blue Cross Blue Shield of Georgia, Inc. and RightChoice Managed Care, Inc.'s (collectively "Anthem") Motion to Modify Subpoenas and Motion for Protective Order (Doc. 317), Defendant's Response thereto (Doc. 319), and Anthem's Reply (Doc. 335); Non-Party United Healthcare, Inc.'s ("United") Motion to Quash Defendant Christian Fletcher's Subpoena Duces Tecum, or in the Alternative, Motion for a Protective Order (Doc. 318), Defendant's Response thereto (Doc. 320), United's Reply (Doc. 334), the Government's Reply (Doc. 331), and Defendant's Sur-Reply (Doc. 339); and Non-Party, Blue Cross Blue Shield of Florida, Inc.'s ("Florida Blue") Motion to Quash, In-Part, Defendant, Christian Fletcher's Subpoena Duces Tecum (Doc. 333) and Defendant's Response thereto (Doc. 344) (collectively "Insurers' Motions").  Upon review, the Insurers' Motions are due to be **GRANTED** to the extent stated herein.

### I. Background

Pursuant to the Superseding Indictment (Doc. 180), Defendant is charged

with conspiracy to commit healthcare fraud and wire fraud (Count 1), conspiracy to commit money laundering (Count 8), and money laundering (Counts 15 & 18). (*See* Doc. 180.) The Court previously entered an Order permitting Defendant to serve subpoenas duces tecum on various non-party entities, including Anthem, United, and Florida Blue. (Doc. 279; *see also* Doc. 314.) The subpoenas commanded those entities to produce: "All books, papers, documents, data, or other objects reflecting the in-network and out-of-network rates that existed between May 2015 and February 2018." (Doc. 279 at 2.)

Thereafter, the Insurers' Motions were filed. In its Motion, Anthem requested that the Court modify its subpoenas to the extent that it be required to produce only four categories of materials:

> 1. De-identified (i.e., HIPAA-compliant) claims data from May 1, 2015 to February 29, 2018 for the laboratories identified in the Superseding Indictment (i.e., Reliance Labs, Pinnacle Labs, LifeBrite Labs), reflecting the amounts paid by the Anthem Entities for tests billed directly under those laboratories' Tax Identification Numbers;[ ]
>
> 2. De-identified (i.e., HIPAA-compliant) claims data from May 1, 2015 to February 29, 2018 for Serodynamics, LLC—a laboratory not identified in the Superseding Indictment but known to the Anthem Entities as performing tests that were billed to the Anthem Entities through Putnam County Memorial Hospital—reflecting the amounts paid by the Anthem Entities for tests billed directly under Serodynamics' Tax Identification Number;
>
> 3. De-identified (i.e., HIPAA-compliant) claims data from May 1, 2015 to February 29, 2018 for additional laboratories that the Defendants or Government identify to the Anthem Entities as having performed tests that

> were billed to the Anthem Entities through Chestatee Regional Hospital or Putnam County Memorial Hospital that are at issue in this matter;[] and
>
> 4. Out-of-network laboratory fee schedules for Missouri and Georgia that were in effect between May 1, 2015 and February 29, 2018.

(Doc. 317 at 8–9.)

In his Response to Anthem's Motion, Defendant argued that, in addition to the above four categories, Anthem should be ordered to "[p]roduce de-identified (i.e., HIPAA-compliant) claims data from May 1, 2015 to February 29, 2018 for ALL in-network and out-of-network laboratory providers in Missouri and Georgia, reflecting the amounts paid by Anthem" ("Fifth Category") (Doc. 319 at 6.) Shortly after Anthem's Motion was filed, United filed its Motion, requesting that the Court quash the subpoena served on it. (*See* Doc. 318.)

Following Defendant's Response to United's Motion, the Court directed United, Anthem, and the Government to continue to confer and to file replies focused on specific areas identified by the Court. (*See* Doc. 324.) In its Reply, United agreed to produce documents responsive to Categories 1–3 but opposed Categories 4 and 5.[1] (Doc. 334 at 4.) In its Reply, Anthem reaffirmed its position that it should be required to produce documents responsive only to Categories 1–

---

[1] Regarding the Fourth Category, United stated that it "does not maintain out-of-network fee schedules. Instead, out-of-network reimbursements are determined on a claim-by-claim basis depending on the terms of the individual health plan. Nevertheless, United asserts that Category 4 seeks irrelevant and inadmissible information." (Doc. 334 at 3 n.1.)

3

4. (*See* Doc. 335.) Although it was not ordered to do so, Florida Blue was involved in the meet and confer process and filed its Motion, indicating that, like Anthem, it agreed to produce material responsive to Categories 1–4 but objected to the Fifth Category. (Doc. 333 at 4–5.) In its Reply, the Government stated its agreement with Anthem that the Fifth Category of documents was not relevant and need not be produced. (*See* Doc. 331.) In his Sur-reply, Defendant maintains that all five categories of material should be produced. (*See* Doc. 339.)

**II. Standard**

Federal Rule of Criminal Procedure 17(c)(1) provides in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

Fed. R. Crim. P. 17(c)(1).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases . . . [instead,] its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974) (citations omitted). To require production before trial, the moving party must show:

> (1) that the documents are evidentiary[1] and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in

4

> good faith and is not intended as a general 'fishing expedition.'

*Id.* at 699–700.

The party requesting the issuance of the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. "The 'specificity' and 'relevancy' requirements are somewhat heightened in that they require more than the title of a document and conjecture as to its contents." *United States v. Blake*, Case No. 13-80054-CR, 2014 WL 1764679, at *4 (S.D. Fla. Mar. 25, 2014) (quotations omitted). As the Eleventh Circuit has stated, Rule 17 "only reaches specifically identified documents that will be admissible as evidence at trial . . . ." *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984).

### III. Analysis

The Insurers' Motions are due to be granted to the extent stated herein because the information sought in the Fifth Category falls far short of satisfying the relevancy, admissibility, and specificity requirements of Rule 17. As previously noted, the Fifth Category requires the Insurers to "[p]roduce de-identified (i.e., HIPAA-compliant) claims data from May 1, 2015 to February 29, 2018 for ALL in-network and out-of-network laboratory providers in Missouri and Georgia, reflecting the amounts paid by [the Insurers]."[2] (Doc. 319 at 6; Doc. 320 at 7–8;

---

[2] The Fifth Category of information sought from Florida Blue is slightly different, encompassing "De-identified (i.e., HIPAA-compliant) claims data from May 2015 through February 2018 for ALL in-network and out-of-network *toxicology (urine and blood) laboratory[] providers* in Florida, reflecting the amounts paid by Florida Blue." (Doc. 344

Doc. 344 at 8.) Defendant appears to argue that these materials will allow him to confirm whether "the rates private insurers . . . paid to in-network and out-of-network [laboratories] were so widely known that the defendants used that to their advantage, which resulted in defrauding the private insurers." (Doc. 319 at 4–5; *see* Doc. 320 at 5; Doc. 344 at 6.) To support this request, Defendant quotes and attaches an email he received from the Government stating, among other things, that "[t]here is material in the discovery indicating that the insurers reimbursed lab claims submitted by in-network rural hospitals with contracts at different, and higher, rates than they would have reimbursed out-of network labs without contracts." (Docs. 319-1 & 320-1.)[3]

In its Reply, the Government contends that the Fifth Category is not relevant:

> The issue here is relevance. The proper comparison for evidentiary purposes is whether (or at what rates) United and the Anthem Entities would have reimbursed the out-of-network labs owned by Fletcher (Lifebrite) and defendants Durall (Reliance) and James Porter (Pinnacle) if those labs submitted claims for the testing services they provided directly to United and the Anthem Entities, versus how much the insurers reimbursed the rural hospitals with in-network contracts. Only evidence of what the defendants' own out-of-network labs received is relevant to the question whether they ran their billing through the rural hospitals in order to benefit from the hospitals' reimbursement rates. . . .
>
> What the insurance companies paid other in-network and

---

at 8) (emphasis added.) However, even with this alteration, the request does not satisfy the relevancy, admissibility, and specificity requirements.

[3] Although inadvertently not attached as Exhibit A to his Response to Florida Blue's Motion, that email is in the record as indicated above. (*See* Doc. 333.)

> out-of-network labs not mentioned in the Superseding Indictment or having any connection to this criminal case is not relevant or admissible.

(Doc. 331 at 5–6.)

The Court agrees with the Government. Regarding the Fifth Category, the subject subpoenas do not satisfy the requirements of relevancy, admissibility, and specificity. This category pertains to payments to other labs that are not involved in any way in this case. Defendant does not adequately articulate any sufficient reason how this information is relevant. Rather, as argued by Anthem, it appears Defendant is engaged in a fishing expedition in the hope of finding some material possibly helpful to his case without being able to articulate with any specificity what he is looking for, why he thinks it exists, and how it is relevant and admissible. (*See* Docs. 319, 320, 339, 344.) Defendant does not even explain how the documents sought would likely show how "widely known" the other laboratories' rates of reimbursement were. (*See* Doc. 319 at 4–5; Doc. 320 at 5; Doc. 344 at 6.)

Thus, as to the Fifth Category, the subpoenas far exceed the scope of Rule 17(c), which allows for *trial* subpoenas to be returnable early, not for *discovery* subpoenas. *See United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) ("Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through [ ] records in a futile effort to find a defense to a criminal charge."); *United States v. Langford*, Case No. 2:08-CR-245-LSC-PWG, 2009 WL 10672813, at *2 (N.D. Ala. Sept. 29, 2009) ("A party may not use Rule 17(c) to gain access to a document

in order to review it to determine whether he wants to use it as evidence; there must be a good faith belief that the subpoenaed document will be used as evidence and that it must be secured for that purpose.").

Moreover, even though Anthem has agreed to produce the documents in the Fourth Category, United need not do so. First, United does not maintain out-of-network fee schedules. (*See* Doc. 334 at 3 n.1.) In addition, the Fourth Category also pertains to laboratories not involved in this case, and therefore such documents do not satisfy the standards of relevancy, admissibility, and specificity. Thus, United's Motion is due to be granted as to the Fourth and Fifth Categories.[4]

Accordingly, it is **ORDERED**:

1. The Insurers' Motions (**Docs. 317, 318, 333**) are **GRANTED** to the extent stated herein.[5]

2. If they have not already done so, Anthem and Florida Blue shall provide Defendant with materials responsive to Categories 1–4 **on or before August 5, 2021**. **By that same date**, United shall provide Defendant with

---

[4] Given the Court's determination that the Fifth Category, and the Fourth Category as to United, do not meet the relevancy, admissibility, and specificity requirements of Rule 17, the Court need not address the Insurers' argument that the subpoenas are unduly burdensome. However, the burdensomeness of the contested requests seems apparent, and Defendant does not address this argument in any of his Responses or his Sur-Reply.

[5] In their Motions, Anthem and United request that the Court broaden the current Protective Order (Doc. 172) to include their production. (Doc. 317 at 9–11; Doc. 318 at 14.) However, the Government recently indicated that it is addressing the protective order with the Defendants and Insurers, and "anticipates that a proposed modification to the existing protective order will be circulated shortly . . . ." (Doc. 362 at 1–2.)

materials responsive to Categories 1–3.[6]

**DONE AND ORDERED** in Jacksonville, Florida on July 15, 2021.

*[Signature]*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

Counsel of Record

---

[6] In his Sur-reply, Defendant requests that "the Court order the government to provide, *in camera*, the specific 'statements contained in the 302s and grand jury testimony of witnesses from Florida Blue, BCBS of Georgia, UHC, and Aetna,'" so that the Court "will have the full evidentiary picture with which to make a ruling." (Doc. 339 at 2.) The Court denies this request as such a review is unnecessary to resolution of the subject Motions.