UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 3:20-cr-86-J-TJC-JBT

CHRISTIAN FLETCHER

    Defendant.
_____/

**CHRISTIAN FLETCHER'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER GRANTING IN PART NON-PARTY PRIVATE INSURERS' MOTIONS TO QUASH AND MEMORANDUM OF LAW**

Christian Fletcher, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 59(a), objects to the order [dkt. 371] the Honorable Joel B. Toomey, United States Magistrate Judge (USMJ), granting in part various private insurers attempt to obscure relevant information that is material to the defense and has been withheld from the government [dkts. 317, 318, and 333] (collectively "private insurers' motions). The USMJ's Order denied Fletcher's attempt to obtain private insurers' data showing **all** in-network and out-of-network reimbursement rates in Missouri, Florida and Georgia to toxicology labs. But the USMJ neglected to consider the

allegations in the superseding indictment [dkt. 180], specifically in paragraph 32, and statements the government has made to the Honorable Timothy J. Corrigan, Chief U.S. District Judge. Both required Judge Toomey to deny the private insurers' motions.

## I.  FACTUAL STATEMENTS APPLICABLE TO THE OBJECTION

The superseding indictment alleges, among other things, that Fletcher and his co-defendants caused the largest private insurers to fraudulently pay sums of money to the defendants. To accomplish this, government has alleged in the superseding indictment and elsewhere that the defendants took advantage of the pay differential between entities that were in-network versus out-of-network. Paragraph 32 expressly alleges:

> Providers [in general and not otherwise limited to the defendants charged in our case or their toxicology laboratories] with which the Private Insurers and other private insurance companies had such contracts were generally referred to as "in-network" providers with those insurers. Providers with which the Private Insurers did not have contracts were generally referred to as "out-of-network" providers with those insurers, and were reimbursed at substantially lower rates, or not at all, for providing services comparable to in-network providers.

Dkt. 180.

This provision was also in the first indictment, which the government has specifically identified as one of the "three germane ones in the

2

government's view." Dkt. 122 at 23. At a hearing, the government said "[a]nd this case is not about inpatient or outpatient billings. It really is about the non-patient billings. As the allegations in the indictment reflect, the government's view is that billings were involved with individuals that had no connection to these hospitals whatsoever." *Id*. at 59.

At another hearing, the government represented, "…what the hospitals were asking for reimbursement for was testing that was performed at these outside independent laboratories and were out-of-network." Dkt. 315 at 102. The government went on to explain "…if they had submitted those claims directly to the insurance company truthfully and honestly, they would have gotten little or no reimbursement, because they were out of the hospital's network." *Id*.

> Further, the government has represented in an email:
>
> …insurers reimbursed lab claims submitted by in-network rural hospitals with contracts at different, and higher, rates than they would have reimbursed out-of-network labs without contracts. For example, we refer you to the statements contained in the 302s and grand jury testimony of witnesses from Florida Blue, BCBS of Georgia, UHC, and Aetna.

Winters, Gary A., Re: Fletcher (sent Mar. 25, 2021) [Dkt. 319-1].

In sum, government has alleged that the defendants were reimbursed at the in-network rate for treating either in-patients or out-patients at a rate higher than they were entitled – that is the out-of-network rates for treating non-patients. The superseding indictment, discovery, and government's representations have made claims data from May 1, 2015 to February 29, 2018 for the specific amounts the private insurers paid to **all** in-network and out-of-network toxicology laboratory providers relevant and admissible.

Fletcher's position is simple – the private insurers knew what was being billed and knowingly paid it pursuant to their contractual obligations, but so disliked the amount paid that the private insurers conned the government into believing the private insurers were fraud victims. The private insurers seek to withhold the information sought in the Rule 17 subpoenas in order to continue to mislead the Court and the parties.

The order, entered on July 15, 2021, failed to account for the provisions in the indictment or the statements made before the District Court.

## II.   MEMORANDUM OF LAW

Pursuant to Federal Rule of Criminal Procedure 59(a):

> …A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense….A party may serve and file objections to the order within 14 days after being served with a copy of a written order….The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous.

The order was entered on July 15, 2021 [dkt. 371]. Accordingly, these objections are timely filed.

A district court may choose to modify or reject a magistrate judge's order. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).

> The magistrate may do no more than propose a recommendation, and neither [28 U.S.C.] § 636(b) nor the General Order gives such recommendation presumptive weight. The district judge is free to follow it or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew. The authority and the responsibility to make an informed, final determination, we emphasize, remains with the judge.

*Id.*; *see also* Rule 59(a) (the Court must "modify or set aside any part of the order that is contrary to law or clearly erroneous").

It is well documented that private insurers pay different rates for different services. *See generally* Anna Wilde Mathews, Tom McGinty and Melanie Evans, *How Much Does a C-Section Cost? At one Hospital, Anywhere*

5

*from $6,241 to $60,584*, WALL ST. J. (Feb. 11, 2021, 8:45 a.m.)[1] (A [UHC] spokesman said that its plan may have lower rates "because we work with high-performing providers to lower healthcare costs through improved health outcomes, data sharing, and a more-coordinated care experience.") and ("…at a [California] hospital…Anthem Inc. is paying several different prices for a vaginal birth…An Anthem spokeswoman said its contracts with hospitals 'achieve sizable overall savings for our members and employers,' and 'looking at a list of prices without the full context makes it impossible to draw meaningful conclusions.'"). The private insurers' own public statements bely their plea to the Court that payments made to other entities are not relevant or admissible and its proposed production is just enough.[2]

In this case, the indictment alleges and the government contends that the rates private insurers paid to **all** in-network and out-of-network toxicology laboratories was so widely known that the defendants used that

---

[1] https://www.wsj.com/articles/how-much-does-a-c-section-cost-at-one-hospital-anywhere-from-6-241-to-60-584-11613051137 (last visited May 11, 2021).

[2] The private insurers failed to provide any analysis considering the disclosed discovery, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004) (footnotes omitted) No such analysis was included in the Order entered on July 15, 2021 [dkt. 371].

to their advantage, which resulted in defrauding the private insurers. As noted above, the government has expressly alleged this in the superseding indictment and intends to call witnesses from the private insurers to say as much. Fletcher simply is entitled to see all of the data in the hands of the private insurers that proves this is, or is not, true. To hold otherwise would effectively allow the government to allege in the indictment in open-ended, general terms what "providers" knew without giving the defendant providers the data to rebut the allegation. This is not a fishing expedition; it is seeking the actual data underlying the indictment's allegation and the government's contention.

### III. CONCLUSION

The Order erroneously granted the private insurers motions to quash and sanctioned their misleading conduct in this case. This court should modify or set aside the magistrate's order, and enter an order denying the

private insurers motions to quash.

Respectfully submitted on July 21, 2021.

**STEVEN H. SADOW, P.C.**

*s/ Steven H. Sadow*
Steven H. Sadow
Georgia Bar No. 622075
260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
Telephone: (404) 577-1400
Facsimile: (404) 577-3600
stevesadow@gmail.com
*Admitted Pro Hac Vice*

**LAW OFFICES OF
HORWITZ & CITRO, P.A.**

*s/ Vincent A. Citro*
Vincent A. Citro
Florida Bar Number: 0468657
17 East Pine Street
Orlando, Florida 32801
Telephone: (407) 843-7733
Facsimile: (407) 849-1321
vince@horwitzcitrolaw.com

Attorneys for Christian Fletcher

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 21, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Vincent A. Citro*
Vincent A. Citro
Florida Bar Number: 0468657
Attorney for Christian Fletcher
